# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.

No. 01-4147

FREDDY RAMIREZ,
            *Defendant-Appellant.*

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.

No. 01-4161

JUAN ANTONIO AGUILAR,
            *Defendant-Appellant.*

Appeals from the United States District Court
for the District of South Carolina, at Greenville.
Henry M. Herlong, Jr., District Judge.
(CR-00-330)

Argued: December 6, 2001

Decided: January 10, 2002

Before LUTTIG, KING, and GREGORY, Circuit Judges.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** William Harry Ehlies, II, Greenville, South Carolina, for
Appellant Ramirez; David Wilson Plowden, Assistant Federal Public

Defender, Greenville, South Carolina, for Appellant Aguilar. Mark C. Moore, Assistant United States Attorney, Columbia, South Carolina, for Appellee. **ON BRIEF:** Scott N. Schools, United States Attorney, E. Jean Howard, Assistant United States Attorney, Greenville, South Carolina, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

Upon observing a tractor-trailer, driven by Freddy Ramirez, drift onto the shoulder of the road, the police patrol initiated a traffic stop. After brief questioning of Ramirez and his passenger, Juan Antonio Aguilar, the police asked for Ramirez' consent to search the vehicle. They uncovered 367 kg of cocaine, which was later introduced at the joint trial of Ramirez and Aguilar. Subsequent to arrest, Ramirez provided DEA agents with certain statements inculpating Aguilar, which were also introduced at trial through the testimony of those agents; Ramirez did not take the stand.

Both Ramirez and Aguilar were convicted of conspiracy to possess with intent to distribute cocaine and of possession with intent to distribute cocaine. Ramirez was sentenced to 293, and Aguilar to 190, months of imprisonment. Ramirez appeals the district court's admission of cocaine discovered during the search and its denial of a decrease in offense level based on minimal or minor participant status. Aguilar, for his part, challenges the admission of Ramirez' statements. We examine each claim in turn.

I.

Trooper Stevens, a member of the Aggressive Criminal Enforcement Team, testified that he decided to stop Ramirez' truck after

observing it veer off to the shoulder. J.A. 17. Once the truck stopped, Stevens questioned Ramirez as to why the vehicle was drifting. Ramirez appeared nervous and claimed that a truck in front of him slowed. J.A. 100-11. When asked about Aguilar, Ramirez at first asserted that Aguilar was his co-driver. After Stevens pointed out that there was no co-driver listed in the logbook, Ramirez changed his story, claiming that Aguilar just wanted a ride. J.A. 111-13. Ramirez was hesitant when asked Aguilar's name; he then responded that he called him "Matusa." J.A. 114. The bill of lading for the load was handwritten and not very descriptive. *Id.* Aguilar, when questioned, gave answers inconsistent with Ramirez' and also changed his own story within minutes. J.A. 118; 157-58. A two-way radio, which Aguilar initially claimed was a camera, was discovered in his pocket. J.A. 36, 120. During these conversations, Stevens performed some inspection of the truck for safety reasons and to dispel his growing suspicion of illegal activity. Ramirez subsequently gave Stevens permission to search the vehicle. That search, performed by troopers and a dog, took about twenty-five minutes.

In analyzing Ramirez' claim of lack of reasonable suspicion for the stop, subsequent questioning and the inspection of the vehicle, we look at the totality of circumstances, *United States* v. *Sokolow*, 490 U.S. 1, 708 (1989), and give credit to "the practical experience of officers who observe on a daily basis what transpires on the streets," *United States* v. *Lender*, 985 F.2d 151, 154 (4th Cir. 1993). We are satisfied that the stop was reasonable — large vehicles drifting out of the marked lanes pose danger. We are also convinced that there was sufficient evidence for the continuation of the stop and for the questioning of Ramirez and Aguilar. Both Ramirez and Aguilar appeared nervous; their stories conflicted; and the bill of lading and the log book were not properly kept. J.A. 110-20. Given these circumstances, which "eliminated a substantial portion of innocent travelers," *United States* v. *Brugal*, 209 F.3d 353, 360 (4th Cir. 2000), and Stevens' training to detect crimes more serious than traffic violations, it was reasonable to continue the questioning and to inspect the exterior of the vehicle.

Ramirez next argues that the length of detention was unreasonable. About fifteen minutes elapsed from the time Ramirez was stopped until he consented to a search; the search then took about twenty-five

more minutes. During the fifteen minute period, Stevens issued a warning ticket, examined Ramirez' paperwork, and questioned him about his passenger; after all his paperwork was returned to him, Ramirez allowed Stevens to search the vehicle. J.A. 31-33. The twenty-five minute search that followed "proceeded expeditiously"; neither Stevens nor other troopers were "dilatory" in their examination of the contents of the cabin, the truck and the load. *United States v. Sharpe*, 470 U.S. 675, 687 (1985). To examine the load, they had to dismantle the crates in the truck. One of the crates, which contained drugs, was extremely hard to open because it had staples, nails, and other fixtures securing it shut. J.A. 44. Naturally, it took some time to get to the packages inside the crates. Given the adduced evidence, there is no doubt that Stevens "diligently pursued a means of investigation that was likely to confirm or dispel [his] suspicions quickly, during which time it was necessary to detain [Ramirez]." *Id.* at 686. Accordingly, we are satisfied that the length of detention was reasonable.

We also reject Ramirez' contention that his consent was invalid because of a language barrier. Stevens testified that he asked Ramirez if he could search the vehicle, that Ramirez said "yes," making a hand gesture in the affirmative, and that he, Stevens, did not perceive any language problems. J.A. 32-33. The district court, presented with this evidence, did not clearly err in concluding that the search was consensual.

Ramirez also claims that the scope of the search exceeded the scope of consent, because "consent . . . would only extend to a single search of the tractor," Br. for Appellant at 28, while Stevens, along with other troopers and the dog, searched both the cabin and the truck in three stages. Moreover, Ramirez claims, he did not consent to the search of the load. *Id.* Stevens testified that Ramirez allowed him to search "the vehicle" and Stevens understood that permission to encompass the cabin, the truck and the load. Ramirez adduces no evidence that his consent was limited, either with respect to the number of times troopers could look through the vehicle, or with respect to the examination of the load. Nor is there any evidence that he objected at any point during that search to the scope of the search. Thus, the court did not err in admitting the seized drugs into evidence.

II.

Ramirez finally argues that he was entitled to a downward adjustment in the offense level because he was "a participant . . . plainly among the least culpable of those involved in the conduct of a group." U.S.S.G. § 3B1.2, n.1. But Ramirez is "not automatically entitle[d] . . . to a reduction" under this Guideline just because he was a courier. *United States* v. *White*, 875 F.2d 427, 434 (4th Cir. 1989). A determination of minor status "turns upon culpability, not courier status." *Id*. Ramirez, the driver of the three-hundred and sixty plus kilogram load, was an "indispensable part of a drug dealing network." *Id*. The district court did not clearly err in denying the downward adjustment.

III.

Aguilar challenges the admission of testimony by DEA agents Duarte and Poag reciting Ramirez' post-arrest statements. Duarte testified that Ramirez named Aguilar in response to the question of who else was involved in the transportation of drugs at issue, and that Ramirez also called Aguilar his "partner." J.A. 262. Duarte also testified that Ramirez stated that Aguilar was present when Ramirez and others loaded the crates, containing drugs, onto the truck in Houston, the origin of the trip. Poag testified that Aguilar was initially riding in a car (accompanying the truck) with Ayala, the owner of the drugs, and that Ayala told Ramirez that he wanted Aguilar to ride in the truck the rest of the way. J.A. 194.

Aguilar did not object at trial to the admission of Ramirez' statements; accordingly, we review under the plain error standard. *United States* v. *Olano*, 507 U.S. 725, 732-37 (1993). It is clear that the district court erred and the error was plain. Under *Bruton* v. *United States*, 391 U.S. 123 (1968), a defendant's Sixth Amendment rights are violated when a non-testifying co-defendant's confession implicates the defendant. Ramirez' confession "facially incriminat[ed]" Aguilar, *Richardson* v. *Marsh*, 481 U.S. 200, 208-09 (1987), by providing "[s]pecific testimony that [Aguilar] helped [Ramirez] to commit the crime." *Id*. at 208 (internal quotations omitted). Such testimony "is more vivid" than inferential incrimination (which is not incriminating on its face, but becomes so only when linked with evidence introduced later at trial), and "hence more difficult to thrust out

of mind." *Id.* at 209. The government's reliance on *United States* v. *Akinkoye*, 185 F.3d 192, 198 (4th Cir. 1999), where the court admitted "redacted statements that refer[red] to the existence of another party who may be the defendant through symbols or neutral pronouns," such as "another person," is misplaced. Although "partner" may be, in isolation, a "neutral pronoun," Ramirez' use of "Aguilar" next to "partner" renders Ramirez' statement "facially incriminat[ing]."

However, the admission of Ramirez' statements did not affect Aguilar's substantial rights because there was sufficient evidence for Aguilar's conviction even absent Ramirez' statements; moreover, both agents were subject to a rigorous cross-examination.

Apart from Ramirez' statements, the government adduced the following evidence of Aguilar's involvement in the conspiracy: both Aguilar's and Ramirez' trips started in Houston, where drugs were loaded onto the truck; at the time of the stop, Aguilar was riding with Ramirez in the truck containing drugs; Aguilar's answers to police questions regarding his relationship to Ramirez, and the origin, destination, and purpose of the trip, were contradictory and inconsistent with Ramirez' statements, which are themselves admissible as co-conspirators' statements pursuant to Federal Rule of Evidence 801(d)(2)(E). Furthermore, the police discovered in Aguilar's pocket a two-way radio, typically used by drug traffickers, J.A. 264. Finally, Aguilar's wallet contained a card with Ayala's home telephone number written on the back. J.A. 184. This evidence was sufficient to support Aguilar's conviction.

Additionally, the defense used the agents' responses on cross-examination to buttress its own theory of the case and to undermine any prejudicial effects that may have resulted from statements on direct. On cross-examination, Duarte admitted that Ramirez said that Aguilar assisted him only by loading crates onto the truck. J.A. 277. That portrayal of the events is *consistent* with Aguilar's primary argument that he did not know that the crates contained cocaine. Furthermore, on cross-examination, Duarte acknowledged that he "*might* have used the word 'partner,'" *id.* (emphasis added), and Aguilar's counsel emphasized that uncertainty in closing. Finally, the defense used the rest of Ramirez' statements to argue that Aguilar was merely a friend of Ayala.

Because the admission of Ramirez' testimony through Duarte and Poag did not affect Aguilar's substantial rights, it is unnecessary to examine the last *Olano* factor.

## *CONCLUSION*

For the reasons stated above, Ramirez' conviction and sentence and Aguilar's conviction are affirmed.

*AFFIRMED*