**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

**No. 12-4340**

———————————

UNITED STATES OF AMERICA,

                Plaintiff – Appellee,

     v.

ROBERT WILSON DRIVER,

                Defendant - Appellant.

———————————

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte.  Max O. Cogburn, Jr., District Judge.  (3:10-cr-00169-MOC-1)

———————————

Submitted:  January 18, 2013        Decided:  March 4, 2013

———————————

Before SHEDD, DUNCAN, and DIAZ, Circuit Judges.

———————————

Affirmed by unpublished per curiam opinion.

———————————

Joshua B. Carpenter, Thomas N. Cochran, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Asheville, North Carolina, for Appellant.  Anne M. Tompkins, United States Attorney, Amy E. Ray, Assistant United States Attorney, Asheville, North Carolina, for Appellee.

———————————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Robert Wilson Driver pled guilty to being a felon in possession of a firearm. His conditional guilty plea reserved the right to an appeal from the denial of his motion to suppress. On appeal, he asserts that police officers unreasonably detained him beyond the permissible scope of a traffic stop. We affirm.

In considering the district court's denial of a motion to suppress, we review the district court's legal determinations de novo and its factual determinations for clear error. When the district court has denied a suppression motion, we must construe the evidence in the light most favorable to the Government. United States v. Mubdi, 691 F.3d 334, 339 (4th Cir. 2012), petition for cert. filed (Nov. 8 & 21, 2012).

Temporary detention during an ordinary traffic stop is a limited seizure, and this court employs the Supreme Court's analysis for investigative detention used in Terry v. Ohio, 392 U.S. 1 (1968), to determine the limits of police conduct. United States v. Guijon-Ortiz, 660 F.3d 757, 764 (4th Cir. 2011). Terry requires a dual inquiry: (1) whether the officer's actions were justified at their inception, and (2) whether the continued stop was "sufficiently limited in scope and duration to satisfy the conditions of an investigative seizure." Florida v. Royer, 460 U.S. 491, 500 (1983) (plurality

2

opinion).  Regarding the first factor, Driver does not dispute that Officer Wright was justified in pulling the car over for erratic driving, and thus, there is no challenge to the conclusion that the initial stop of Driver's vehicle was proper.

Turning to the second inquiry under Terry, we must determine whether Wright "diligently pursue[d] the investigation of the justification for the stop." Guijon-Ortiz, 660 F.3d at 766 (internal quotation marks omitted).  A lawful traffic stop justifies detaining the vehicle's occupants for the time necessary to request a driver's license and vehicle registration, run a computer check, and issue a citation.  United States v. Digiovanni, 650 F.3d 498, 507 (4th Cir. 2011).  While the officer may briefly inquire into unrelated matters, the officer may not "definitively abandon[] the prosecution of the traffic stop and embark[] on another sustained course of investigation" absent additional justification.  Guijon-Ortiz, 660 F.3d at 766 (internal quotation marks omitted).

To prolong a traffic stop beyond a de minimus delay, an officer "must possess a justification for doing so other than the initial traffic violation that prompted the stop in the first place."  United States v. Branch, 537 F.3d 328, 336 (4th Cir. 2008).  This requires "either the driver's consent or a 'reasonable suspicion' that illegal activity is afoot."  Id.

When determining whether reasonable suspicion exists, we look at the totality of the circumstances and analyze whether the officer has a particularized, objective basis for suspecting legal wrongdoing. United States v. Arvizu, 534 U.S. 266, 273 (2002). When evaluating the legality of a Terry stop, courts have been instructed to "take a commonsense and contextual approach[.]" Branch, 537 F.3d at 336.

We conclude that reasonable suspicion of criminal activity existed at the moment (if not before) that Christopher Ellison arrived on the scene and was determined to be in possession of marijuana. Ellison walked out of the woods shortly after the car in which Driver was the passenger was stopped. Herron, Driver's girlfriend, was driving. Ellison was frisked and stated that he was planning to meet Driver and Herron. At this point in time, at most nine minutes after Driver's vehicle was stopped, the officers could briefly extend the stop for a period of time reasonably necessary to confirm or dispel their suspicions. See United States v. Vaughan, 700 F.3d 705, 710 (4th Cir. 2012). In the course of the next ten minutes, Officer Herrera separated Herron and Driver, frisked Driver, and obtained Herron's permission to search the vehicle, which we conclude were necessary and reasonable actions to take based on the officers' reasonable suspicion of criminal activity.

4

During the period of time between the initial stop and the gathering of reasonable suspicion, we find that Wright "diligently pursue[d] the investigation of the justification for the stop." Guijon-Ortiz, 660 F.3d at 766 (internal quotation marks and citation omitted). In those nine minutes, Wright's actions were consistent with the prosecution of a traffic stop: he secured the area, including dealing with the unexpected arrival of Ellison; he waited briefly for back-up; he obtained identification from Herron; and he ran record checks on the identification and the vehicle's tags. Based on the foregoing, neither the stop nor Wright's actions prior to the point where the stop was prolonged based on reasonable suspicion violated the Fourth Amendment.

Driver argues that Wright, very early in the encounter, abandoned any pretense of a traffic-infraction investigation and instead conducted a robbery-suspect investigation. Driver points to the facts that Wright never requested the car rental agreement, that Wright refused to tell Driver and Herron why they were being stopped, and that Herrera was not even aware that a traffic violation was alleged when he sought Herron's permission to search. As such, Driver contends, once Wright finished checking Herron's information, the stop should have ended. Because this happened prior to seeking

5

consent from Herron, Driver argues that the continued seizure was improper.

However, the appropriate inquiry is whether Wright completed his traffic-infraction investigation prior to the time the officers obtained reasonable suspicion that criminal activity was afoot. If the traffic-infraction investigation ended prior to the establishment of reasonable suspicion, Herron and Driver should have been sent on their way. Once the officers had reasonable suspicion, however, they were justified in prolonging the stop to investigate. We conclude that the officers had this reasonable suspicion at a point in time when Wright was either still investigating the traffic violation or had just completed it. Thus, there was no time during Driver's detention when the officers were not either properly investigating the traffic violation or properly investigating their reasonable suspicion of criminal activity.

Driver also argues that the officers did not have reasonable suspicion that criminal activity was afoot. Driver contends that Ellison was unarmed and cooperative and that even the officers did not believe that Herron or Driver were involved with the marijuana found on Ellison. Therefore, according to Driver, the relevant factors, even taken together, are insufficient to show reasonable suspicion that Driver was planning to commit a burglary or robbery.

6

Based upon our review of the record, when the stop was prolonged, officers knew that (1) Driver was out past his probation curfew; (2) Driver was in a pitch black neighborhood he did not ordinarily frequent and in which he had no known associates; (3) Driver was a suspect in two recent robberies based on the physical description of the assailant and his vehicle and Driver's criminal record; (4) Driver's criminal history included robbery and breaking-and-entering convictions; (5) Driver was far from home in an upper-middle-class neighborhood with no lighting; (6) on the way to the neighborhood, the driver of the car had driven recklessly and evasively; (7) the car initially drove off down a dead end street when Wright's marked police car approached; and (8) almost immediately after the car was stopped, Ellison appeared from the woods, carrying marijuana, and explaining that he was there to meet Driver and Herron. While most of these individual factors might be consistent with innocent behavior, these circumstances, viewed in their totality, could "give rise to reasonable suspicion" that Driver and Herron had driven to this neighborhood to meet Ellison and commit a robbery or burglary. United States v. Mason, 628 F.3d 123, 129 (4th Cir. 2010) (internal quotation marks omitted). Since context does matter and respect for the training and expertise of officers must be given due weight, we conclude that the officers

possessed specific and articulable facts sufficient to justify prolonging the stop.  See Branch, 537 F.3d at 336; see also United States v. Clarkson, 551 F.3d 1196, 1202 (10th Cir. 2009) (holding that time of night and a match of even a general suspect description are relevant factors in determining reasonable suspicion); United States v. Padilla, 548 F.3d 179, 188 (2d Cir. 2008) (noting that it is proper to consider officers' experience and familiarity with a particular area and its inhabitants, as well as the fact that Defendant chose an unlit route).  Accordingly, Herron's consent to the search of the car was valid.

We therefore affirm.  We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

8