Affirmed by published opinion. Judge WILKINSON wrote the majority opinion, *826 in which Judge- HUDSON joined. Judge GREGORY wrote an opinion concurring in part and dissenting in part.
WILKINSON, Circuit Judge:
Petitioner Victor Mason was convicted by a jury of one count of conspiracy to possess with intent to distribute five or more kilograms of powder cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846. His arrest followed a traffic stop on Interstate 20 in Georgia. He now brings a 28 U.S.C. § 2255 petition challenging his conviction on grounds of ineffective assistance of counsel. He makes several claims, among them his attorneys’ failure to raise both a racially selective law enforcement argument and a Fifth Amendment violation before the trial court and on direct appeal. The district court rejected Mason’s claims, and for the following reasons, we affirm.
I.
A.
On August 12, 2005, Georgia State Trooper Blake Swicord stopped Victor Mason, who was driving eastbound on Interstate 20, in Morgan County, Georgia. Trooper Swicord initiated the stop because he suspected the vehicle’s windows were tinted in excess of the lawful limit. When the officer activated his blue lights, audio and video equipment in the patrol car automatically began recording. Trooper Swicord testified that after stopping Mason several things aroused his suspicion, including the fact that Mason had not immediately pulled over, that the car smelled strongly of air freshener and that there was no visible luggage. He asked Mason to step out of the car and questioned both occupants of the vehicle — Mason, who was driving, and his cousin Nathaniel Govan, who occupied the passenger seat. Mason explained to Trooper Swicord that he had borrowed the car from his daughter and that the men had driven to Atlanta to visit Mason’s uncle and see about a deed. Go-van told a different story, saying that they had driven to see a friend.
Noticing a newspaper from the Radisson Hotel in the backseat, which matched neither story, Trooper Swicord suspected that the two men had lied about where they had been and were involved in criminal activity. Trooper Swicord returned to the patrol car to radio Sergeant Michael Kitchens, and ask him to come to the scene with his drug-detection dog: “When you get through with that ... come on over here to me, right here. I got something right here. These guys are spooky, spooky.” J.A. at 98. Returning to the stopped vehicle, the police officer tested the window tinting — finding it above the legal limit— and again walked back to his patrol car. He radioed in Mason and Govan’s names and dates of birth, asking the dispatcher to “just hold 'em for right now.” See J.A. at 100. Returning to Mason and Govan’s car, he gave Mason a warning ticket for the illegal tint, completing the traffic stop.
However, instead of releasing Mason and Govan, he requested consent to search the vehicle, -asking specifically if Mason had “any drugs in the car.” See J.A. at 100. Mason declined to consent to a search. Trooper Swicord asked Govan to exit the vehicle, by which point Sergeant Kitchens had arrived with his drug-detection dog. The dog alerted to the presence of narcotics, at one point jumping into the backseat through the open driver-side window. At that point, Trooper Swicord proceeded to search the vehicle. In the trunk, he found a black gym bag containing approximately ten kilograms of powder cocaine.
Trooper Swicord arrested both Govan and Mason, read them their Miranda rights, and placed them in the backseat of *827 the patrol car. The audio and video recording equipment chronicled the conversation between the men. Although Govan did most of the talking, Mason also participated in the conversation as they discussed the traffic stop and the fact that both men were on probation at the time of the arrest.
B.
Mason was indicted and charged in the District of South Carolina with conspiracy to possess with intenUto distribute more than five kilograms of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846. Prior to trial, Mason filed a motion to suppress the evidence, challenging the extension of the traffic stop and the car search on Fourth Amendment grounds. See United States v. Mason, 628 F.3d 123, 127 (4th Cir.2010). He argued that Trooper Swieord “lacked reasonable suspicion to detain him beyond completion of the traffic stop,” and that “the dog’s entry into his vehicle was not supported by probable cause.” Id.
At the suppression hearing, Trooper Swieord testified that he called Sergeant Kitchens for backup because he “felt like we were fixing to have a violent confrontation” as “Mr. Mason and Mr. Govan are older black males that are not in good shape” and he thought they were likely “fixing to shoot it out.” See J.A. at 34-35.' The district court denied Mason’s motion to suppress and a two-day jury trial followed.
At trial, Govan, who had pled guilty, served as the primary witness against Mason. Govan testified that he had put the bag in the trunk, that he had not looked in the bag, and that he did not know whether Mason knew there were drugs in the bag. However, he did suggest that Mason knew the purpose of the trip based on a prior conversation between the two. The government introduced the video and a transcript of the conversation between Govan and Mason in the patrol car into evidence. Mason chose not to testify, and his attorney focused on calling into question Go-van’s credibility as a witness.
During closing argument, in his rebuttal, the prosecutor referenced the conversation, arguing that if Mason did not know what was in the trunk, he would have been more surprised by the discovery of drugs:
Ladies and gentlemen, if Mr. Mason didn’t know that there were 10 bricks of cocaine in that car, do you really think that’s how that conversation in the back of that patrol car would have gone? ... When they stacked those ten kilos up; if nobody expected those to be there, somebody is going to be real upset ... That is not what the transcript and the audio that you could hear in their conversation shows. What it shows, nobody was surprised.
J.A. at 402-03.
The jury convicted Mason and he was sentenced under. 21 U.S.C. § 841(b)(1)(A) to life imprisonment based on the quantity of drugs and his prior criminal record. He appealed, challenging the lawfulness of extending the traffic stop, the search by the drug dog, and the use of prior convictions in sentencing. He did not challenge the fact that Trooper Swicord had “ ‘probable cause to believe that a traffic violation [had] occurred’ ” sufficient to initiate the stop of Mason’s vehicle. United States v. Sowards, 690 F.3d 583, 588 (4th Cir.2012) (quoting Whren v. United States, 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996)). On appeal, this court concluded that “the objective facts facing Trooper Swieord created a reasonable suspicion of criminal activity and that he was therefore justified ... in extending the stop.” Mason, 628 F.3d at 130. In addition, this court found probable cause to justify the *828 search of the vehicle. The fact that the drug dog alerted several times outside the vehicle “creat[ed] probable cause to believe that narcotics were present even prior to the dog’s entry into the vehicle.” Id. Mason’s conviction became final on October 3, 2011, when the United States Supreme Court denied his petition for writ of certio-rari.
On September 21, 2012, Mason filed a § 2255 petition for collateral relief, alleging ineffective assistance of counsel at both the trial and appellate proceedings.[1] Petitioner asserted ineffective representation on five grounds, including — at issue here— failure to raise an Equal Protection challenge alleging racially selective law enforcement and failure to raise a possible violation of his Fifth Amendment rights based on the government’s trial reference to his post-arrest silence. The district court denied his petition on the merits. This court granted petitioner a certificate of appealability on the Equal Protection question on August 1, 2013, and a separate certificate on the Fifth Amendment question on May 23, 2014.
II.
Mason first contends that he received ineffective assistance because counsel declined to raise an Equal Protection claim of racially selective law enforcement. For this court to find ineffective assistance of counsel, Mason must demonstrate both that his counsel’s performance fell below the standard of objective reasonableness and that the deficient performance was prejudicial to his defense. See Strickland v. Washington, 466 U.S. 668, 687-88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). This he cannot do.
A.
It is important at the outset to emphasize the basic lesson of Strickland v. Washington: “judicial scrutiny of counsel’s performance must be highly deferential.” Id. at 689, 104 S.Ct. 2052. It is “all too tempting for a defendant to second-guess counsel’s assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel’s defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.” Id. Thus, an evaluation of attorney performance requires that “every effort be' made to eliminate the distorting effects of hindsight.” Id. Further, we must “indulge a strong presumption that counsel’s conduct falls within the wide range of reasonable professional assistance.” Id. Attorneys need not raise every possible claim to meet the constitutional standard of effectiveness. They are permitted to set priorities, determine trial strategy, and press those claims with the greatest chances of success. See Evans v. Thompson, 881 F.2d 117, 124 (4th Cir.1989). In fact, there are “countless ways to provide effective assistance in any given case.” Strickland, 466 U.S. at 689, 104 S.Ct. 2052. “Even the best criminal defense attorneys would not defend a particular client in the same way.” Id.
The “right to effective assistance of counsel extends to require such assistance on direct appeal” as well as at trial. Bell v. Jarvis, 236 F.3d 149, 164 (4th Cir.2000) (en banc) (applying the Strickland standard to claims of ineffective assistance of counsel during appellate proceeding). We likewise presume that appellate counsel “decided which issues were most likely to afford relief on appeal.” Pruett v. Thompson, 996 F.2d 1560, 1568 (4th Cir.1993). Effective assistance of appellate *829 counsel “does not require the presentation of all issues on appeal that may have merit.” Lawrence v. Branker, 517 F.3d 700, 709 (4th Cir.2008). As a general matter, “ ‘only when ignored issues are clearly stronger than those presented’ ” should we find ineffective assistance for failure to pursue claims on appeal. Smith v. Robbins, 528 U.S. 259, 288, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000) (quoting Gray v. Greer, 800 F.2d 644, 646 (7th Cir.1986)).
Mason’s counsel, by choosing to pursue a Fourth Amendment claim rather than an Equal Protection challenge, acted effectively under the aforementioned standards. To find otherwise would involve the very course of hindsight and the very faulting of counsel for raising stronger rather than weaker claims that the Supreme Court has insisted we avoid. It would be wholly wrong to find ineffective assistance of counsel when Mason’s attorneys diligently pursued the claims they quite reasonably believed to be the most likely to succeed. See Smith, 528 U.S. at 288, 120 S.Ct. 746. Although it is frequently raised, a finding of ineffective assistance of counsel still carries a significant stigma for members of the profession. We decline to tar Mason’s attorneys with this brush. The bar for censure is not so low.
The Fourth Amendment challenge to the extension of the traffic stop and the dog search was an obvious one. Competent attorneys would instinctively have examined such a claim where defendant’s case arose from a police stop, an extension of said stop, and a subsequent search of the vehicle. The factual context plainly implicates the Fourth Amendment. Even though the claim was ultimately unsuccessful, it would be anomalous to characterize Mason’s attorneys as ineffective for pursuing it. In fact, a panel of this court heard argument on the contention, wrote extensively on it, and responded to a thoughtful dissenting opinion. See generally Mason, 628 F.3d 123. There can be no plausible suggestion made that Mason’s attorneys were anything but capable and competent in pursuing the Fourth Amendment challenge. Id.
B.
By contrast to the well-settled path of Fourth Amendment challenges, the racially selective law enforcement claim was a long shot. The Constitution “prohibits selective enforcement of the law based on considerations such as race.” Whren, 517 U.S. at 813, 116 S.Ct. 1769. Mason claims that he and Govan were singled out for the window tint violation (disproportionately associated with minority drivers), that the officer described them as “spooky,” waited for backup because they were “older black men that are not in good shape” and likely to “shoot it out,” and kept them on the side of the road and searched the car. All of this, he says, suggests an impermissible race-based motivation underlying Trooper Swieord’s conduct. Appellant’s Br. at 18-22.
As the district court recognized, counsel were not ineffective in appreciating the difficulty of this course. This court has adopted the standard the Supreme Court set forth in United States v. Armstrong, 517 U.S. 456, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996), for cases of racially animated law enforcement. See United States v. Bullock, 94 F.3d 896, 899 (4th Cir.1996). The defendant must show both “discriminatory effect and that [the officer’s action] was motivated by a discriminatory purpose.” Armstrong, 517 U.S. at 465, 116 S.Ct. 1480 (quoting Wayte v. United States, 470 U.S. 598, 608, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985)). Both the Supreme Court and this court have explained why this is a difficult contention on which to prevail. A selective law enforce *830 ment claim “asks a court to exercise judicial power over a special province of the Executive.” Id. at 464, 116 S.Ct. 1480 (internal quotation marks omitted). In light of “the great danger of unnecessarily impairing the performance of a core executive constitutional function,” petitioners must demonstrate “clear evidence” of racially animated selective law enforcement. United States v. Olvis, 97 F.3d 739, 743 (4th Cir.1996).
This “standard is intended to be a ‘demanding’ and ‘rigorous’ one.” Id. (quoting Armstrong, 517 U.S. at 463, 468, 116 S.Ct. 1480). Counsel can hardly be deemed ineffective for taking the Supreme Court’s own statements as to its difficulty and as to its separation of powers implications into account. To show discriminatory effect, petitioner must demonstrate, inter alia, that “similarly situated individuals of a different race” were not similarly targeted by law enforcement. Olvis, 97 F.3d at 743 (quoting Armstrong, 517 U.S. at 465, 116 S.Ct. 1480). Here, for example, there was no evidence of similarly situated whites being treated differently. See Armstrong, 517 U.S. at 470, 116 S.Ct. 1480 (“[I]f the claim of selective prosecution were well founded, it should not have been an insuperable task to prove that persons of other races were being treated differently.”).
In sum, the Armstrong burden is a demanding one and Mason has failed to identify any cases at the Supreme Court or in this circuit where an Armstrong violation for selective law enforcement has been found. Fourth Amendment claims, by contrast, are often successful. See, e.g., United States v. Massenburg, 654 F.3d 480 (4th Cir.2011) (finding officer lacked reasonable suspicion sufficient to justify search of suspect on foot). More specifically, several Fourth Amendment infringements have been found recently as to car searches, the very context, if not the precise facts, that counsel was confronting here. See, e.g., United States v. Powell, 666 F.3d 180 (4th Cir.2011) (finding officer lacked reasonable suspicion to frisk passenger in extension of routine traffic stop).
To be sure, the two challenges are not, at least as a technical matter, mutually exclusive. See, e.g., Whren, 517 U.S. at 813, 116 S.Ct. 1769. However, one is clearly more likely to be successful than the other. Attorneys can be selective and strategic without risking an ineffective assistance of counsel claim. See Strickland, 466 U.S. at 689, 104 S.Ct. 2052. We have consistently made clear that we do not penalize attorneys for failing to bring novel or long-shot contentions. See, e.g., United States v. McNamara, 74 F.3d 514, 516 (4th Cir.1996) (novel claims); see also Pruett, 996 F.2d at 1568 (long-shot claims). Attorneys exist to exercise professional judgment, which often involves setting priorities. See Bell, 236 F.3d at 164. Indeed, it can be positively detrimental to a client’s chances not to set priorities but rather to scattershot the case by raising every objection at trial and pressing every imaginable contention on appeal. In fact, “ ‘[w]innowing out weaker arguments on appeal and focusing on those more likely to prevail ... is the hallmark of effective appellate advocacy.’ ” Id. (quoting Smith v. Murray, 477 U.S. 527, 536, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986)) (brackets in original).
Mason’s attorneys, on this record, chose to pursue a challenge under the Fourth Amendment to the extension of the traffic stop and to the K-9 search that led to his arrest. See United States v. Mason, 628 F.3d 123 (4th Cir.2010). The vast majority of attorneys would have chosen this exact same course as the most effective defense for their client and the path most likely to succeed. We cannot say Mason’s attor *831 neys were ineffective for choosing the route more commonly tread and more likely to be successful before the district and appellate courts.
C.
Mason also contends that the district court should have held an evidentiary hearing to evaluate whether counsel were ineffective for failing to raise an Equal Protection claim. See Appellant’s Br. at 29. He argues that, even if the current record is insufficient to support a claim of racially animated law enforcement, Trooper Swicord’s testimony at the suppression hearing and at trial provides grounds for an evidentiary hearing. However, the district judge was quite familiar with the facts, as well as the performance of counsel. That judge had presided over the suppression hearing and the trial, as well as on collateral review. In fact, the extension of the stop as well as the search, indeed every phase of police activity in this case, has been subject to a hearing. We see no need now to remand for a further repetitive exercise.
Although claims of racially selective law enforcement and challenges under the Fourth Amendment are not identical, they certainly overlap. Here, this court had determined that the “objective facts facing Trooper Swicord created a reasonable suspicion of criminal activity” such that no violation of the Fourth Amendment occurred. Mason, 628 F.3d at 130. Where there exists an objectively reasonable basis for the officer’s conduct after rigorous challenge, it is even less likely that an Armstrong claim would get off the ground. One can debate endlessly the implications of this or that, but the overall picture borne out by this record is that of an officer who reasonably suspected criminal activity was afoot and called for backup to further the objectives of law enforcement and to ensure his personal safety. We see nothing to impeach the district court’s conclusion that what happened here was a standard law enforcement procedure done in a manner that this court previously found to be objectively well-grounded. See Mason, 628 F.3d 123.
To begin, the stop could not have been racially motivated because the tinted windows prevented the officer from identifying the race of the occupants. In fact, the very purpose of window tinting is to prevent outside observers from seeing who occupies or what is happening in the vehicle. Officers cannot just cease enforcement efforts where there is an objective reason to believe that there has been a violation of the law. To surmise a race-based reason for the stop or Trooper Swi-cord’s call for backup is to.fault competent attorneys for not undertaking a stretch. The overpowering scent of air freshener— often used to cover the smell of drugs — the conflicting stories offered by Govan and Mason, the newspaper from the hotel, and the lack of luggage all provided in the considered judgment of the prior panel, a sufficient and reasonable basis for Trooper Swicord to suspect criminal activity was afoot. See Mason, 628 F.3d at 128-29.
Moreover, Trooper Swicord was by himself facing two suspects on a route where drug trafficking was common. He was entitled to call for backup, which again is altogether routine, especially in a situation that could quickly escalate. Trooper Swi-cord at trial testified that “another officer on the scene ... deters multiple suspects from trying something” that they might have tried with only one officer present. J.A. at 179. The parties likewise seek to parse and debate at some length the officer’s use of the terms “spooky” and “older black males.” In the overall context of this case, however, the high bar of Strickland cannot be satisfied, given the reason *832 able strategic decision of Mason’s attorneys to prioritize the Fourth Amendment claims. Both the trial court and this court approved of Trooper Swicord’s overall assessment of what was transpiring in his presence. See Mason, 628 F.3d at 128. That counsel did not succeed in their vigorous challenge of Trooper Swicord’s actions is due to no fault of their own, but rather attributable to the stubborn facts of a difficult case.[2]
We do not suggest that all lawyers are presumptively capable or that racially motivated police actions can be overlooked even where there is reasonable suspicion of criminal activity. See Whren, 517 U.S. at 813, 116 S.Ct. 1769. Nor do we submit that Armstrong challenges can never be successful. The facts of this case, however, do not suggest a successful Armstrong claim and certainly not to the extent that counsel was ineffective in failing to raise it. No one disputes that racial discrimination in both its overt and subtle forms continues to exist. But to feel sadness and dismay at the persistence of prejudice is not to say that larger social shortcomings should come crashing down upon two competent attorneys’ shoulders. Such scapegoating would betray the noblest ends of law. We cannot fault Mason’s counsel for believing their client’s far better chance in challenging this sequence of events lay with the Fourth Amendment, not the Equal Protection Clause. From a broader perspective, the record shows Mason received competent representation throughout these proceedings, a fact that the Supreme Court does not allow the eye of ever wiser hindsight to undo.
III.
Mason also contends that he received ineffective assistance because counsel failed to properly challenge the use of his post-arrest silence in the prosecutor’s closing remarks. He argues that the prosecutor’s suggestion that Mason did not express sufficient surprise at the presence of drugs in his car in his post-arrest conversation with Govan violated his Fifth Amendment rights as set forth by the Supreme Court in Doyle v. Ohio, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). Doyle, however, does not apply here.
In Doyle, the defendant was arrested for selling marijuana to a police informant and was given Miranda warnings. Id. at 611-12, 96 S.Ct. 2240. At trial, he argued that he had been framed by the informant. Id. at 612, 96 S.Ct. 2240. The.,government, unable to present direct evidence to contradict his story, tried to impeach his testimony by repeatedly asking why he had remained silent instead of giving that story to the arresting officer. Id. at 613-14, 96 S.Ct. 2240. The Supreme Court held that where a person has been informed of his Miranda rights, it violates due process to allow the government to suggest the jury draw unfavorable inferences from his choice to remain silent. See id. at 619, 96 S.Ct. 2240. However, a defendant who voluntarily speaks following Miranda warnings has neither been induced to speak nor remained silent. See Anderson v. Charles, 447 U.S. 404, 408, 100 S.Ct. 2180, 65 L.Ed.2d 222 (1980).
Here Mason spoke voluntarily with Govan in the back of the police car *833 after he had been given his Miranda warnings. The conversation was not part of a custodial interrogation; indeed it was not initiated by law enforcement at all.. Mason did not contest at trial that he engaged in the conversation in the patrol car and his attorney challenged statements that were made by Govan but inadvertently attributed to Mason in the transcript seen by the jury. Mason’s counsel even attempted to use the conversation herself to support the theory of Mason’s defense: that he was unaware of the drugs in the car. See J.A. at 394. Conversation that is not the product of interrogation — speech that is not compelled — does not fall under Doyle’s protection of the Fifth Amendment “right to remain silent.” Doyle, 426 U.S. at 617, 96 S.Ct. 2240. Rather, Doyle ensures that defendants who have been informed of their right to remain silent can do so even in the face of persistent police interrogation without fear of repercussions at trial. See Doyle, 426 U.S. at 618-19, 96 S.Ct. 2240 (“[Wjhile it is true that the Miranda warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings.”). Mason had been warned that anything he said could be used against him. We do not fault the prosecutor for doing so at trial, and we do not fault Mason’s attorneys for declining to pursue a non-existent Doyle violation in this case.
IV.
For the foregoing reasons, we affirm the district court’s judgment that counsel was not ineffective in this case.

AFFIRMED.

. Petitioner was represented by two separate attorneys at trial and on direct appeal.

. Our friend in dissent does not contest either the vigor with which Mason's counsel pursued the Fourth Amendment claim or, indeed, the overall defense put forth by these lawyers for their client. In short, they did a good job. It is all too easy to pore over the record, pick out a single item in hindsight, and say that this bore further investigation. Lawyers who do a good job deserve to be free of the Monday morning (or years later) quarterbacking that the Supreme Court in Strickland asked us to avoid.