Justice GORSUCH, concurring in part and dissenting in part.
No one agrees who started the trouble at the 2014 Alaska Arctic Man Festival, but everyone agrees two troopers ended it by arresting Russell Bartlett for harassing one of them. And it's that arrest that led to this lawsuit. Mr. Bartlett alleges that the real reason the troopers arrested him had nothing to do with harassment and everything to do with his decision to exercise his First Amendment free speech rights by voicing his opinions to the troopers. Mr. Bartlett contends that the officers' retaliation against his First Amendment protected speech entitles him to damages under 42 U.S.C. § 1983. For their part, the troopers insist that the fact they had probable cause to arrest Mr. Bartlett for some crime, or really any crime, should be enough to shield them from liability.
The parties approach their dispute from some common ground. Both sides accept that an officer violates the First Amendment when he arrests an individual in retaliation for his protected speech. They seem to agree, too, that the presence of probable cause does not undo that violation or erase its significance. And for good reason. History shows that governments sometimes seek to regulate our lives finely, acutely, thoroughly, and exhaustively. In our own time and place, criminal laws have grown so exuberantly and come to cover so much previously innocent conduct that almost anyone can be arrested for something. If the state could use these laws not for their intended purposes but to silence those who voice unpopular ideas, little would be left of our First Amendment liberties, and little would separate us from the tyrannies of the past or the malignant fiefdoms of our own age. The freedom to speak without risking arrest is "one of the principal characteristics by which we distinguish a free nation." Houston v. Hill , 482 U.S. 451, 463, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987).
So if probable cause can't erase a First Amendment violation, the question becomes whether its presence at least forecloses a civil claim for damages as a statutory matter under § 1983. But look at that statute as long as you like and you will find no reference to the presence or absence of probable cause as a precondition or defense to any suit. Instead, the statute imposes liability on anyone who, under color of state law, subjects another person "to the deprivation of any rights, privileges, or immunities secured by the Constitution." Maybe it would be good policy to graft a no-probable-cause requirement onto the statute, as the officers insist; or maybe not. Either way, that's an appeal better directed to Congress than to this Court. Our job isn't to write or revise legislative policy but to apply it faithfully.
Admittedly, though, that's not quite the end of the statutory story. Courts often assume that Congress adopts statutes against the backdrop of the common law. And, for this reason, we generally read § 1983's terms "in harmony with general principles of tort immunities and defenses"
*1731 that existed at the time of the statute's adoption. Imbler v. Pachtman , 424 U.S. 409, 418, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). As the officers before us are quick to point out, too, law enforcement agents who made a lawful arrest at the time of § 1983's adoption couldn't be held liable at common law for the tort of false arrest or false imprisonment. Of course, at common law a police officer often needed a warrant to execute a lawful arrest. But today warrantless arrests are often both authorized by state law and permitted by the Constitution (as this Court has interpreted it), so long as the officer possesses probable cause to believe a crime has been committed. And, given this development, you might wonder if the presence of probable cause should be enough to foreclose any First Amendment claim arising out of an arrest.
But that much doesn't follow. As the officers' own reasoning exposes, the point of the common law tort of false arrest or false imprisonment was to remedy arrests and imprisonments effected without lawful authority . See Director General of Railroads v. Kastenbaum , 263 U.S. 25, 27, 44 S.Ct. 52, 68 L.Ed. 146 (1923) ; accord, Brief for United States as Amicus Curiae 9. So maybe probable cause should be enough today to defeat claims for false arrest or false imprisonment, given that arrests today are usually legally authorized if supported by probable cause. But that doesn't mean probable cause is also enough to defeat a First Amendment retaliatory arrest claim. The point of this kind of claim isn't to guard against officers who lack lawful authority to make an arrest. Rather, it's to guard against officers who abuse their authority by making an otherwise lawful arrest for an unconstitutional reason .
Here's another way to look at it. The common law tort of false arrest translates more or less into a Fourth Amendment claim. That's because our precedent considers a warrantless arrest unsupported by probable cause-the sort that gave rise to a false arrest claim at common law-to be an unreasonable seizure in violation of the Fourth Amendment. See Manuelv.Joliet , 580 U.S. ----, ----, 137 S.Ct. 911, 919, 197 L.Ed.2d 312 (2017). But the First Amendment operates independently of the Fourth and provides different protections. It seeks not to ensure lawful authority to arrest but to protect the freedom of speech.
Here's a way to test the point, too. Everyone accepts that a detention based on race, even one otherwise authorized by law , violates the Fourteenth Amendment's Equal Protection Clause. In Yick Wo v. Hopkins , 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886), for example, San Francisco jailed many Chinese immigrants for operating laundries without permits but took no action against white persons guilty of the same infraction. Even if probable cause existed to believe the Chinese immigrants had broken a valid law-even if they had in fact violated the law-this Court held that the city's discriminatory enforcement violated the Fourteenth Amendment. Id. , at 373-374, 6 S.Ct. 1064 ; see also Whren v. United States , 517 U.S. 806, 813, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). Following our lead, the courts of appeals have recognized that § 1983 plaintiffs alleging racially selective arrests in violation of the Fourteenth Amendment don't have to show a lack of probable cause, even though they might have to show a lack of probable cause to establish a violation of the Fourth Amendment: "[S]imply because a practice passes muster under the Fourth Amendment (arrest based on probable cause) does not mean that unequal treatment with respect to that practice is consistent with equal protection."
*1732 Hedgepeth v. Washington Metropolitan Area Transit Auth. , 386 F. 3d 1148, 1156 (C.A.D.C. 2004) ; see also Gibson v. Superintendent of N. J. Dept. of Law and Public Safety-Div. of State Police , 411 F. 3d 427, 440 (C.A.3 2005) ; Marshall v. Columbia Lea Regional Hospital , 345 F. 3d 1157, 1166 (C.A.10 2003) ; Vakilian v. Shaw , 335 F. 3d 509, 521 (C.A.6 2003) ; Johnson v. Crooks , 326 F. 3d 995, 999-1000 (C.A.8 2003) ; Holland v. Portland , 102 F. 3d 6, 11 (C.A.1 1996).
I can think of no sound reason why the same shouldn't hold true here. Like a Fourteenth Amendment selective arrest claim, a First Amendment retaliatory arrest claim serves a different purpose than a Fourth Amendment unreasonable arrest claim, and that purpose does not depend on the presence or absence of probable cause. We thus have no legitimate basis for engrafting a no-probable-cause requirement onto a First Amendment retaliatory arrest claim.
But while it would be a mistake to think the absence of probable cause is an essential element of a First Amendment retaliatory arrest claim under § 1983-or that the presence of probable cause is an absolute defense to such a claim-I acknowledge that it may also be a mistake to assume probable cause is entirely irrelevant to the analysis. It seems to me that probable cause to arrest could still bear on the claim's viability in at least two ways that warrant further exploration in future cases.
First , consider causation. To show an arrest violated the First Amendment, everyone agrees a plaintiff must prove the officer would not have arrested him but for his protected speech. And if the only offense for which probable cause to arrest existed was a minor infraction of the sort that wouldn't normally trigger an arrest in the circumstances-or if the officer couldn't identify a crime for which probable cause existed until well after the arrest-then causation might be a question for the jury. By contrast, if the officer had probable cause at the time of the arrest to think the plaintiff committed a serious crime of the sort that would nearly always trigger an arrest regardless of speech, then (absent extraordinary circumstances) it's hard to see how a reasonable jury might find that the plaintiff's speech caused the arrest. In cases like that, it would seem that officers often will be entitled to dismissal on the pleadings or summary judgment.
In the name of causation concerns, the officers ask us to go further still and hold that a plaintiff can never prove protected speech caused his arrest without first showing that the officers lacked probable cause to make an arrest. But that absolute rule doesn't wash with common experience. No one doubts that officers regularly choose against making arrests, especially for minor crimes, even when they possess probable cause. So the presence of probable cause does not necessarily negate the possibility that an arrest was caused by unlawful First Amendment retaliation.
If logic doesn't support their argument, the officers reply, at least precedent does. They point to Hartman v. Moore , 547 U.S. 250, 126 S.Ct. 1695, 164 L.Ed.2d 441 (2006), where the plaintiff alleged that a law enforcement officer retaliated against him for his speech by convincing a prosecutor to bring criminal charges against him. This Court held the claim presented a "distinct problem of causation" that could be overcome only with proof that the prosecutor lacked probable cause for the charges. Id. , at 263, 126 S.Ct. 1695. And as a matter of precedent, the officers argue, what was true there should hold true here.
But Hartman does not demand nearly as much of us as the officers suggest. Hartman justified its rule by explaining that the "causal connection required" in *1733 that case wasn't just between the officer's retaliatory intent and his own injurious action. Instead, it was between the officer's intent and the injurious action of the prosecutor , whose charging decision was subject to a "presumption of regularity." Id. , at 262-263, 126 S.Ct. 1695. In that particular context, Hartman said, proof that the prosecutor lacked probable cause was necessary to "bridge the gap between the [officer's] motive and the prosecutor's action." Id. , at 263, 126 S.Ct. 1695. But Hartman made equally clear that its reasoning did not extend to "ordinary retaliation claims, where the government agent allegedly harboring the animus is also the individual allegedly taking the adverse action." Id. , at 259-260, 126 S.Ct. 1695. And that describes a retaliatory arrest claim like Mr. Bartlett's to a tee. So while probable cause may wind up defeating causation in some retaliatory arrest cases, nothing in our precedent (let alone logic) suggests that causation is always unprovable just because the officer had probable cause to arrest.
Second , our precedent suggests the possibility that probable cause may play a role in light of the separation of powers and federalism. In United States v. Armstrong , 517 U.S. 456, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996), a plaintiff alleged that he was prosecuted because of his race. This Court responded by acknowledging that racially selective prosecutions can violate the Equal Protection Clause even when the prosecutor possesses probable cause to believe a crime has been committed. But because the decision whether to institute criminal charges is one our Constitution vests in state and federal executive officials, not judges, this Court also held that, to respect the separation of powers and federalism, a plaintiff must present " 'clear evidence' " of discrimination when a federal or state official possesses probable cause to support his prosecution. Id. , at 465, 116 S.Ct. 1480. Explaining the content of the clear evidence requirement, this Court indicated that a plaintiff generally must produce evidence that the prosecutor failed to charge other similarly situated persons. At the same time, however, the Court also suggested that equally clear evidence in the form of " 'direct admissions by prosecutors of discriminatory purpose' " might be enough to allow a claim to proceed. Id. , at 469, n. 3, 116 S.Ct. 1480 (alterations omitted).
Though this case involves a retaliatory arrest claim rather than a selective prosecution claim, it's at least an open question whether the concerns that drove this Court's decision in Armstrong may be in play here. No one before us argues that Armstrong was wrongly decided. And the Court today seems to indicate that something like Armstrong 's standard might govern a retaliatory arrest claim when probable cause exists to support an arrest. See ante , at 1727 - 1728 (citing Armstrong ). Some courts of appeals, too, have already applied Armstrong to claims alleging selective arrest under the Fourteenth Amendment. See, e.g. , United States v. Mason , 774 F. 3d 824, 829-830 (C.A.4 2014) ; United States v. Alcaraz-Arellano , 441 F. 3d 1252, 1264 (C.A.10 2006) ; Johnson , 326 F. 3d at 1000.
At the same time, enough questions remain about Armstrong 's potential application that I hesitate to speak definitively about it today. Some courts of appeals have argued that Armstrong should not extend, at least without qualification, beyond prosecutorial decisions to arrests by police. These courts have suggested that the presumptions of regularity and immunity that usually attach to official prosecutorial decisions do not apply equally in the less formal setting of police arrests. They've reasoned, too, that comparative data about similarly situated individuals *1734 may be less readily available for arrests than for prosecutorial decisions, and that other kinds of evidence-such as an officer's questions and comments to the defendant-may be equally if not more probative in the arrest context. See, e.g. , United States v. Sellers , 906 F. 3d 848, 856 (C.A.9 2018) ; United States v. Washington , 869 F. 3d 193, 219 (C.A.3 2017) ; United States v. Davis , 793 F. 3d 712, 720-721 (C.A.7 2015) ; Marshall , 345 F. 3d at 1168. Importantly, we did not grant certiorari to resolve exactly how Armstrong might apply to retaliatory arrest claims. Nor did the briefing before us explore the competing arguments in this circuit split. And given all this, I believe it would be rash for us to do more at this point than acknowledge the possibility of Armstrong 's application.
Dissenting, Justice SOTOMAYOR reads the majority opinion as adopting a rigid rule (more rigid, in fact, than Armstrong 's) that First Amendment retaliatory arrest plaintiffs who can't prove the absence of probable cause must produce "comparison-based evidence" in every case. Post , at 1736 - 1738. But I do not understand the majority as going that far. The only citation the majority offers in support of its new standard is Armstrong , which expressly left open the possibility that other kinds of evidence, such as admissions, might be enough to allow a claim to proceed. Given that, I retain hope that lower courts will apply today's decision "commonsensically," post , at 1741 - 1742, and with sensitivity to the competing arguments about whether and how Armstrong might apply in the arrest setting.
For today, I believe it is enough to resolve the question on which we did grant certiorari-whether "probable cause defeats ... a First Amendment retaliatory-arrest claim under § 1983." Pet. for Cert. i. I would hold, as the majority does, that the absence of probable cause is not an absolute requirement of such a claim and its presence is not an absolute defense. At the same time, I would also acknowledge that this does not mean the presence of probable cause is categorically irrelevant: It may bear on causation, and it may play a role under Armstrong . But rather than attempt to sort out precisely when and how probable cause plays a role in First Amendment claims, I would reserve decision on those questions until they are properly presented to this Court and we can address them with the benefit of full adversarial testing.
Justice GINSBURG, concurring in the judgment in part and dissenting in part.
Arrest authority, as several decisions indicate, can be abused to disrupt the exercise of First Amendment speech and press rights. See, e.g., Lacey v. Maricopa County , 693 F. 3d 896, 907-910 (C.A.9 2012) (en banc) (newspaper publishers alleged they were arrested in nighttime raid after publishing story on law enforcement's investigation of the newspaper); Roper v. New York , 2017 WL 2483813, *1 (S.D.N.Y., June 7, 2017) (photographers documenting Black Lives Matter protest alleged they were arrested for standing in street and failing to use crosswalk; sidewalks and crosswalks were blocked by police); Morse v. San Francisco Bay Area Rapid Transit Dist. (BART) , 2014 WL 572352, *1-*7 (N.D. Cal., Feb. 11, 2014) (only journalist arrested at protest was journalist critical of Bay Area Rapid Transit Police). Given the array of laws proscribing, e.g., breach of the peace, disorderly conduct, obstructing public ways, failure to comply with a peace officer's instruction, and loitering, police may justify an arrest as based on probable cause when the arrest was in fact prompted by a retaliatory motive. If failure to show lack of probable cause defeats an action under 42 U.S.C. § 1983, only entirely baseless arrests will be checked. I *1735 remain of the view that the Court's decision in Mt. Healthy City Bd. of Ed. v. Doyle , 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), strikes the right balance: The plaintiff bears the burden of demonstrating that unconstitutional animus was a motivating factor for an adverse action; the burden then shifts to the defendant to demonstrate that, even without any impetus to retaliate, the defendant would have taken the action complained of. See Hartman v. Moore , 547 U.S. 250, 266-267, 126 S.Ct. 1695, 164 L.Ed.2d 441 (2006) (GINSBURG, J., dissenting).
In this case, I would reverse the Ninth Circuit's judgment as to Trooper Weight. As the Court points out, the record is bereft of evidence of retaliation on Weight's part. See ante, at 1727 - 1728. As to Sergeant Nieves, there is some evidence of animus in Nieves' statement, "bet you wish you would have talked to me now," App. 376, but perhaps not enough to survive summary judgment. Cf. Higginbotham v. Sylvester , 741 Fed. Appx. 28, 31 (C.A.2 2018) ("[A] reasonable factfinder could not find that [the plaintiff's] exercise of his First Amendment right ... was the 'but-for' cause of his arrest."). In any event, I would not use this thin case to state a rule that will leave press members and others exercising First Amendment rights with little protection against police suppression of their speech.