PUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 12-8042

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

VICTOR EUGENE MASON,

Defendant - Appellant.

Appeal from the United States District Court for the District of
South Carolina, at Columbia. Cameron McGowan Currie, Senior
District Judge. (3:06-cr-00607-CMC-1; 3:12-cv-02757-CMC)

Argued: September 16, 2014        Decided: December 18, 2014

Before WILKINSON and GREGORY, Circuit Judges, and Henry E.
HUDSON, United States District Judge for the Eastern District of
Virginia, sitting by designation.

Affirmed by published opinion. Judge Wilkinson wrote the
majority opinion, in which Judge Hudson joined. Judge Gregory
wrote an opinion concurring in part and dissenting in part.

**ARGUED**: Nathan S. Mammen, KIRKLAND & ELLIS LLP, Washington,
D.C., for Appellant. James Hunter May, OFFICE OF THE UNITED
STATES ATTORNEY, Columbia, South Carolina, for Appellee. **ON
BRIEF**: William Fink, KIRKLAND & ELLIS LLP, Washington, D.C., for
Appellant. William N. Nettles, United States Attorney, Jimmie
Ewing, Assistant United States Attorney, OFFICE OF THE UNITED
STATES ATTORNEY, Columbia, South Carolina, for Appellee.

WILKINSON, Circuit Judge:

Petitioner Victor Mason was convicted by a jury of one count of conspiracy to possess with intent to distribute five or more kilograms of powder cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846. His arrest followed a traffic stop on Interstate 20 in Georgia. He now brings a 28 U.S.C. § 2255 petition challenging his conviction on grounds of ineffective assistance of counsel. He makes several claims, among them his attorneys' failure to raise both a racially selective law enforcement argument and a Fifth Amendment violation before the trial court and on direct appeal. The district court rejected Mason's claims, and for the following reasons, we affirm.

I.

A.

On August 12, 2005, Georgia State Trooper Blake Swicord stopped Victor Mason, who was driving eastbound on Interstate 20, in Morgan County, Georgia. Trooper Swicord initiated the stop because he suspected the vehicle's windows were tinted in excess of the lawful limit. When the officer activated his blue lights, audio and video equipment in the patrol car automatically began recording. Trooper Swicord testified that after stopping Mason several things aroused his suspicion, including the fact that Mason had not immediately pulled over, that the car smelled strongly of air freshener and that there

2

was no visible luggage. He asked Mason to step out of the car and questioned both occupants of the vehicle – Mason, who was driving, and his cousin Nathaniel Govan, who occupied the passenger seat. Mason explained to Trooper Swicord that he had borrowed the car from his daughter and that the men had driven to Atlanta to visit Mason's uncle and see about a deed. Govan told a different story, saying that they had driven to see a friend.

Noticing a newspaper from the Radisson Hotel in the backseat, which matched neither story, Trooper Swicord suspected that the two men had lied about where they had been and were involved in criminal activity. Trooper Swicord returned to the patrol car to radio Sergeant Michael Kitchens, and ask him to come to the scene with his drug-detection dog: "When you get through with that . . . come on over here to me, right here. I got something right here. These guys are spooky, spooky." J.A. at 98. Returning to the stopped vehicle, the police officer tested the window tinting -- finding it above the legal limit -- and again walked back to his patrol car. He radioed in Mason and Govan's names and dates of birth, asking the dispatcher to "just hold 'em for right now." See J.A. at 100. Returning to Mason and Govan's car, he gave Mason a warning ticket for the illegal tint, completing the traffic stop.

However, instead of releasing Mason and Govan, he requested consent to search the vehicle, asking specifically if Mason had "any drugs in the car." See J.A. at 100. Mason declined to consent to a search. Trooper Swicord asked Govan to exit the vehicle, by which point Sergeant Kitchens had arrived with his drug-detection dog. The dog alerted to the presence of narcotics, at one point jumping into the backseat through the open driver-side window. At that point, Trooper Swicord proceeded to search the vehicle. In the trunk, he found a black gym bag containing approximately ten kilograms of powder cocaine.

Trooper Swicord arrested both Govan and Mason, read them their Miranda rights, and placed them in the backseat of the patrol car. The audio and video recording equipment chronicled the conversation between the men. Although Govan did most of the talking, Mason also participated in the conversation as they discussed the traffic stop and the fact that both men were on probation at the time of the arrest.

B.

Mason was indicted and charged in the District of South Carolina with conspiracy to possess with intent to distribute more than five kilograms of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846. Prior to trial, Mason filed a motion to suppress the evidence, challenging the extension of the traffic

4

stop and the car search on Fourth Amendment grounds. See United States v. Mason, 628 F.3d 123, 127 (4th Cir. 2010). He argued that Trooper Swicord "lacked reasonable suspicion to detain him beyond completion of the traffic stop," and that "the dog's entry into his vehicle was not supported by probable cause." Id.

At the suppression hearing, Trooper Swicord testified that he called Sergeant Kitchens for backup because he "felt like we were fixing to have a violent confrontation" as "Mr. Mason and Mr. Govan are older black males that are not in good shape" and he thought they were likely "fixing to shoot it out." See J.A. at 34-35. The district court denied Mason's motion to suppress and a two-day jury trial followed.

At trial, Govan, who had pled guilty, served as the primary witness against Mason. Govan testified that he had put the bag in the trunk, that he had not looked in the bag, and that he did not know whether Mason knew there were drugs in the bag. However, he did suggest that Mason knew the purpose of the trip based on a prior conversation between the two. The government introduced the video and a transcript of the conversation between Govan and Mason in the patrol car into evidence. Mason chose not to testify, and his attorney focused on calling into question Govan's credibility as a witness.

During closing argument, in his rebuttal, the prosecutor referenced the conversation, arguing that if Mason did not know

5

what was in the trunk, he would have been more surprised by the discovery of drugs:

> Ladies and gentlemen, if Mr. Mason didn't know that there were 10 bricks of cocaine in that car, do you really think that's how that conversation in the back of that patrol car would have gone? . . . When they stacked those ten kilos up, if nobody expected those to be there, somebody is going to be real upset. . . That is not what the transcript and the audio that you could hear in their conversation shows. What it shows, nobody was surprised.

J.A. at 402-03.

The jury convicted Mason and he was sentenced under 21 U.S.C. § 841(b)(1)(A) to life imprisonment based on the quantity of drugs and his prior criminal record. He appealed, challenging the lawfulness of extending the traffic stop, the search by the drug dog, and the use of prior convictions in sentencing. He did not challenge the fact that Trooper Swicord had "'probable cause to believe that a traffic violation [had] occurred'" sufficient to initiate the stop of Mason's vehicle. United States v. Sowards, 690 F.3d 583, 588 (4th Cir. 2012) (quoting Whren v. United States, 517 U.S. 806, 810 (1996)). On appeal, this court concluded that "the objective facts facing Trooper Swicord created a reasonable suspicion of criminal activity and that he was therefore justified . . . in extending the stop." Mason, 628 F.3d at 130. In addition, this court found probable cause to justify the search of the vehicle. The fact that the drug dog alerted several times outside the vehicle "creat[ed] probable

6

cause to believe that narcotics were present even prior to the dog's entry into the vehicle." Id. Mason's conviction became final on October 3, 2011, when the United States Supreme Court denied his petition for writ of certiorari.

On September 21, 2012, Mason filed a § 2255 petition for collateral relief, alleging ineffective assistance of counsel at both the trial and appellate proceedings.[1] Petitioner asserted ineffective representation on five grounds, including -- at issue here -- failure to raise an Equal Protection challenge alleging racially selective law enforcement and failure to raise a possible violation of his Fifth Amendment rights based on the government's trial reference to his post-arrest silence. The district court denied his petition on the merits. This court granted petitioner a certificate of appealability on the Equal Protection question on August 1, 2013, and a separate certificate on the Fifth Amendment question on May 23, 2014.

## II.

Mason first contends that he received ineffective assistance because counsel declined to raise an Equal Protection claim of racially selective law enforcement. For this court to find ineffective assistance of counsel, Mason must demonstrate both that his counsel's performance fell below the standard of

---

[1] Petitioner was represented by two separate attorneys at trial and on direct appeal.

7

objective reasonableness and that the deficient performance was prejudicial to his defense. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). This he cannot do.

## A.

It is important at the outset to emphasize the basic lesson of Strickland v. Washington: "[j]udicial scrutiny of counsel's performance must be highly deferential." Id. at 689. It is "all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. Thus, an evaluation of attorney performance requires that "every effort be made to eliminate the distorting effects of hindsight." Id. Further, we must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. Attorneys need not raise every possible claim to meet the constitutional standard of effectiveness. They are permitted to set priorities, determine trial strategy, and press those claims with the greatest chances of success. See Evans v. Thompson, 881 F.2d 117, 124 (4th Cir. 1989). In fact, there are "countless ways to provide effective assistance in any given case." Strickland, 466 U.S. at 689. "Even the best criminal defense

attorneys would not defend a particular client in the same way." Id.

The "right to effective assistance of counsel extends to require such assistance on direct appeal" as well as at trial. Bell v. Jarvis, 236 F.3d 149, 164 (4th Cir. 2000) (en banc) (applying the Strickland standard to claims of ineffective assistance of counsel during appellate proceeding). We likewise presume that appellate counsel "decided which issues were most likely to afford relief on appeal." Pruett v. Thompson, 996 F.2d 1560, 1568 (4th Cir. 1993). Effective assistance of appellate counsel "does not require the presentation of all issues on appeal that may have merit." Lawrence v. Branker, 517 F.3d 700, 709 (4th Cir. 2008). As a general matter, "'only when ignored issues are clearly stronger than those presented'" should we find ineffective assistance for failure to pursue claims on appeal. Smith v. Robbins, 528 U.S. 259, 288 (2000) (quoting Gray v. Greer, 800 F.2d 644, 646 (7th Cir. 1986)).

Mason's counsel, by choosing to pursue a Fourth Amendment claim rather than an Equal Protection challenge, acted effectively under the aforementioned standards. To find otherwise would involve the very course of hindsight and the very faulting of counsel for raising stronger rather than weaker claims that the Supreme Court has insisted we avoid. It would be wholly wrong to find ineffective assistance of counsel when

9

Mason's attorneys diligently pursued the claims they quite reasonably believed to be the most likely to succeed. See Smith, 528 U.S. at 288. Although it is frequently raised, a finding of ineffective assistance of counsel still carries a significant stigma for members of the profession. We decline to tar Mason's attorneys with this brush. The bar for censure is not so low.

The Fourth Amendment challenge to the extension of the traffic stop and the dog search was an obvious one. Competent attorneys would instinctively have examined such a claim where defendant's case arose from a police stop, an extension of said stop, and a subsequent search of the vehicle. The factual context plainly implicates the Fourth Amendment. Even though the claim was ultimately unsuccessful, it would be anomalous to characterize Mason's attorneys as ineffective for pursuing it. In fact, a panel of this court heard argument on the contention, wrote extensively on it, and responded to a thoughtful dissenting opinion. See generally Mason, 628 F.3d 123. There can be no plausible suggestion made that Mason's attorneys were anything but capable and competent in pursuing the Fourth Amendment challenge. Id.

B.

By contrast to the well-settled path of Fourth Amendment challenges, the racially selective law enforcement claim was a long shot. The Constitution "prohibits selective enforcement of

10

the law based on considerations such as race." Whren, 517 U.S. at 813. Mason claims that he and Govan were singled out for the window tint violation (disproportionately associated with minority drivers), that the officer described them as "spooky," waited for backup because they were "older black men that are not in good shape" and likely to "shoot it out," and kept them on the side of the road and searched the car. All of this, he says, suggests an impermissible race-based motivation underlying Trooper Swicord's conduct. Appellant's Br. at 18-22.

As the district court recognized, counsel were not ineffective in appreciating the difficulty of this course. This court has adopted the standard the Supreme Court set forth in United States v. Armstrong, 517 U.S. 456 (1996), for cases of racially animated law enforcement. See United States v. Bullock, 94 F.3d 896, 899 (4th Cir. 1996). The defendant must show both "discriminatory effect and that [the officer's action] was motivated by a discriminatory purpose." Armstrong, 517 U.S. at 465 (quoting Wayte v. United States, 470 U.S. 598, 608 (1985)). Both the Supreme Court and this court have explained why this is a difficult contention on which to prevail. A selective law enforcement claim "asks a court to exercise judicial power over a special province of the Executive." Id. at 464 (internal quotation marks omitted). In light of "the great danger of unnecessarily impairing the performance of a core executive

11

constitutional function," petitioners must demonstrate "clear evidence" of racially animated selective law enforcement. United States v. Olvis, 97 F.3d 739, 743 (4th Cir. 1996).

This "standard is intended to be a 'demanding' and 'rigorous' one." Id. (quoting Armstrong, 517 U.S. at 463, 468). Counsel can hardly be deemed ineffective for taking the Supreme Court's own statements as to its difficulty and as to its separation of powers implications into account. To show discriminatory effect, petitioner must demonstrate, inter alia, that "similarly situated individuals of a different race" were not similarly targeted by law enforcement. Olvis, 97 F.3d at 743 (quoting Armstrong, 517 U.S. at 465). Here, for example, there was no evidence of similarly situated whites being treated differently. See Armstrong, 517 U.S. at 470 ("[I]f the claim of selective prosecution were well founded, it should not have been an insuperable task to prove that persons of other races were being treated differently.").

In sum, the Armstrong burden is a demanding one and Mason has failed to identify any cases at the Supreme Court or in this circuit where an Armstrong violation for selective law enforcement has been found. Fourth Amendment claims, by contrast, are often successful. See, e.g., United States v. Massenburg, 654 F.3d 480 (4th Cir. 2011) (finding officer lacked reasonable suspicion sufficient to justify search of suspect on

12

foot). More specifically, several Fourth Amendment infringements have been found recently as to car searches, the very context, if not the precise facts, that counsel was confronting here. See, e.g., United States v. Powell, 666 F.3d 180 (4th Cir. 2011) (finding officer lacked reasonable suspicion to frisk passenger in extension of routine traffic stop).

To be sure, the two challenges are not, at least as a technical matter, mutually exclusive. See, e.g., Whren, 517 U.S. at 813. However, one is clearly more likely to be successful than the other. Attorneys can be selective and strategic without risking an ineffective assistance of counsel claim. See Strickland, 466 U.S. at 689. We have consistently made clear that we do not penalize attorneys for failing to bring novel or long-shot contentions. See, e.g., United States v. McNamara, 74 F.3d 514, 516 (4th Cir. 1996) (novel claims); see also Pruett, 996 F.3d at 1568 (long-shot claims). Attorneys exist to exercise professional judgment, which often involves setting priorities. See Bell, 236 F.3d at 164. Indeed, it can be positively detrimental to a client's chances not to set priorities but rather to scattershot the case by raising every objection at trial and pressing every imaginable contention on appeal. In fact, "'[w]innowing out weaker arguments on appeal and focusing on those more likely to prevail . . . is the hallmark of

effective appellate advocacy.'" Id. (quoting Smith v. Murray, 477 U.S. 527, 536 (1986)) (brackets in original).

Mason's attorneys, on this record, chose to pursue a challenge under the Fourth Amendment to the extension of the traffic stop and to the K-9 search that led to his arrest. See United States v. Mason, 628 F.3d 123 (4th Cir. 2010). The vast majority of attorneys would have chosen this exact same course as the most effective defense for their client and the path most likely to succeed. We cannot say Mason's attorneys were ineffective for choosing the route more commonly tread and more likely to be successful before the district and appellate courts.

## C.

Mason also contends that the district court should have held an evidentiary hearing to evaluate whether counsel were ineffective for failing to raise an Equal Protection claim. See Appellant's Br. at 29. He argues that, even if the current record is insufficient to support a claim of racially animated law enforcement, Trooper Swicord's testimony at the suppression hearing and at trial provides grounds for an evidentiary hearing. However, the district judge was quite familiar with the facts, as well as the performance of counsel. That judge had presided over the suppression hearing and the trial, as well as on collateral review. In fact, the extension of the stop as well

14

as the search, indeed every phase of police activity in this case, has been subject to a hearing. We see no need now to remand for a further repetitive exercise.

Although claims of racially selective law enforcement and challenges under the Fourth Amendment are not identical, they certainly overlap. Here, this court had determined that the "objective facts facing Trooper Swicord created a reasonable suspicion of criminal activity" such that no violation of the Fourth Amendment occurred. Mason, 628 F.3d at 130. Where there exists an objectively reasonable basis for the officer's conduct after rigorous challenge, it is even less likely that an Armstrong claim would get off the ground. One can debate endlessly the implications of this or that, but the overall picture borne out by this record is that of an officer who reasonably suspected criminal activity was afoot and called for backup to further the objectives of law enforcement and to ensure his personal safety. We see nothing to impeach the district court's conclusion that what happened here was a standard law enforcement procedure done in a manner that this court previously found to be objectively well-grounded. See Mason, 628 F.3d 123.

To begin, the stop could not have been racially motivated because the tinted windows prevented the officer from identifying the race of the occupants. In fact, the very purpose

15

of window tinting is to prevent outside observers from seeing who occupies or what is happening in the vehicle. Officers cannot just cease enforcement efforts where there is an objective reason to believe that there has been a violation of the law. To surmise a race-based reason for the stop or Trooper Swicord's call for backup is to fault competent attorneys for not undertaking a stretch. The overpowering scent of air freshener -- often used to cover the smell of drugs -- the conflicting stories offered by Govan and Mason, the newspaper from the hotel, and the lack of luggage all provided in the considered judgment of the prior panel, a sufficient and reasonable basis for Trooper Swicord to suspect criminal activity was afoot. See Mason, 628 F.3d at 128-29.

Moreover, Trooper Swicord was by himself facing two suspects on a route where drug trafficking was common. He was entitled to call for backup, which again is altogether routine, especially in a situation that could quickly escalate. Trooper Swicord at trial testified that "another officer on the scene . . . deters multiple suspects from trying something" that they might have tried with only one officer present. J.A. at 179. The parties likewise seek to parse and debate at some length the officer's use of the terms "spooky" and "older black males." In the overall context of this case, however, the high bar of Strickland cannot be satisfied, given the reasonable

16

strategic decision of Mason's attorneys to prioritize the Fourth Amendment claims. Both the trial court and this court approved of Trooper Swicord's overall assessment of what was transpiring in his presence. See Mason, 628 F.3d at 128. That counsel did not succeed in their vigorous challenge of Trooper Swicord's actions is due to no fault of their own, but rather attributable to the stubborn facts of a difficult case.[2]

We do not suggest that all lawyers are presumptively capable or that racially motivated police actions can be overlooked even where there is reasonable suspicion of criminal activity. See Whren, 517 U.S. at 813. Nor do we submit that Armstrong challenges can never be successful. The facts of this case, however, do not suggest a successful Armstrong claim and certainly not to the extent that counsel was ineffective in failing to raise it. No one disputes that racial discrimination in both its overt and subtle forms continues to exist. But to feel sadness and dismay at the persistence of prejudice is not to say that larger social shortcomings should come crashing down

---

[2] Our friend in dissent does not contest either the vigor with which Mason's counsel pursued the Fourth Amendment claim or, indeed, the overall defense put forth by these lawyers for their client. In short, they did a good job. It is all too easy to pore over the record, pick out a single item in hindsight, and say that this bore further investigation. Lawyers who do a good job deserve to be free of the Monday morning (or years later) quarterbacking that the Supreme Court in Strickland asked us to avoid.

17

upon two competent attorneys' shoulders. Such scapegoating would betray the noblest ends of law. We cannot fault Mason's counsel for believing their client's far better chance in challenging this sequence of events lay with the Fourth Amendment, not the Equal Protection Clause. From a broader perspective, the record shows Mason received competent representation throughout these proceedings, a fact that the Supreme Court does not allow the eye of ever wiser hindsight to undo.

## III.

Mason also contends that he received ineffective assistance because counsel failed to properly challenge the use of his post-arrest silence in the prosecutor's closing remarks. He argues that the prosecutor's suggestion that Mason did not express sufficient surprise at the presence of drugs in his car in his post-arrest conversation with Govan violated his Fifth Amendment rights as set forth by the Supreme Court in Doyle v. Ohio, 426 U.S. 610 (1976). Doyle, however, does not apply here.

In Doyle, the defendant was arrested for selling marijuana to a police informant and was given Miranda warnings. Id. at 611-12. At trial, he argued that he had been framed by the informant. Id. at 612. The government, unable to present direct evidence to contradict his story, tried to impeach his testimony by repeatedly asking why he had remained silent instead of giving that story to the arresting officer. Id. at 613-14. The

18

Supreme Court held that where a person has been informed of his Miranda rights, it violates due process to allow the government to suggest the jury draw unfavorable inferences from his choice to remain silent. See id. at 619. However, a defendant who voluntarily speaks following Miranda warnings has neither been induced to speak nor remained silent. See Anderson v. Charles, 447 U.S. 404, 408 (1980).

Here Mason spoke voluntarily with Govan in the back of the police car after he had been given his Miranda warnings. The conversation was not part of a custodial interrogation; indeed it was not initiated by law enforcement at all. Mason did not contest at trial that he engaged in the conversation in the patrol car and his attorney challenged statements that were made by Govan but inadvertently attributed to Mason in the transcript seen by the jury. Mason's counsel even attempted to use the conversation herself to support the theory of Mason's defense: that he was unaware of the drugs in the car. See J.A. at 394. Conversation that is not the product of interrogation – speech that is not compelled – does not fall under Doyle's protection of the Fifth Amendment "right to remain silent." Doyle, 426 U.S. at 617. Rather, Doyle ensures that defendants who have been informed of their right to remain silent can do so even in the face of persistent police interrogation without fear of repercussions at trial. See Doyle, 426 U.S. at 618-19 ("[W]hile

19

it is true that the Miranda warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings."). Mason had been warned that anything he said could be used against him. We do not fault the prosecutor for doing so at trial, and we do not fault Mason's attorneys for declining to pursue a non-existent Doyle violation in this case.

IV.

For the foregoing reasons, we affirm the district court's judgment that counsel was not ineffective in this case.

AFFIRMED

20

GREGORY, Circuit Judge, concurring in part and dissenting in part:

I concur in the majority's decision to affirm a) the district court's dismissal of Mason's ineffective assistance claims against his appellate counsel, and b) the dismissal of his claim that his trial counsel was ineffective for failing to raise a Fifth Amendment challenge. Mason also contends that, "[i]n light of the evidence of racially motivated law enforcement and Trooper Swicord's admitted selective enforcement of the window tint law," Appellant's Br. 26, his trial counsel provided ineffective assistance by failing to develop an equal protection challenge. The majority affirms the district court's dismissal of this claim. I respectfully dissent.

Mason's trial counsel faced a record that included: Trooper Swicord's admission that he uses window tint violations to "fish" for vehicles that "peak[ his] interest", statements about Mason's behavior that are directly contradicted by video footage of the stop, use of the word "spooky" to describe Mason and his cousin, an inexplicable reference to Mason's race as a justification for expecting violence, and actions inconsistent with Trooper Swicord's alleged concern for his safety. And yet Mason's trial counsel not only failed to <u>raise</u> an Equal Protection Clause challenge, but also neglected even to <u>investigate</u> a single one of these red flags to determine whether

such a challenge was viable. If Trooper Swicord's actions were driven by legitimate concerns rather than racial bias, a clarifying line of inquiry would have afforded him the opportunity to make his motivations clear. If, on the other hand, Trooper Swicord did target Mason because of his race, the attorney's investigation would have given Mason a chance to challenge the constitutional violation. Instead, both Mason's and Trooper Swicord's narratives remain incomplete. Trial counsel's deficient performance caused Mason to suffer prejudice at trial, and cannot satisfy the Sixth Amendment's guarantee of effective assistance of counsel. For these reasons, I would reverse the district court on this issue.

The majority correctly notes that the standard for establishing ineffective assistance of counsel is deferential to attorneys. See Strickland v. Washington, 466 U.S. 668, 689 (1984). But reasonableness is the touchstone of this inquiry, and an attorney who acts unreasonably in representing her client has not provided counsel that can pass constitutional muster. Id. at 687. Furthermore, while strategic decisions based on an attorney's thorough investigation are "virtually unchallengeable," "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Id. at 690-91. The Court in Strickland

22

recognized that "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Id. at 691.

To determine whether Mason's trial counsel was deficient for failing to develop a selective enforcement claim, we must examine the claim itself. The Equal Protection Clause prohibits officers from selectively enforcing laws based on race. Whren v. United States, 517 U.S. 806, 813 (1996). When determining whether a traffic stop was unconstitutionally selective, this Court applies the selective prosecution standard laid out in United States v. Armstrong, 517 U.S. 456 (1996). See United States v. Bullock, 94 F.3d 896, 899 (4th Cir. 1996). The claimant must show that the enforcement policy 1) "had a discriminatory effect," and 2) "was motivated by a discriminatory purpose." Armstrong, 517 U.S. at 465.

To prove a discriminatory effect, Mason's counsel would have had to show that similarly situated persons of a different race were not subject to traffic stops. Id. at 465. Trooper Swicord admitted that he must enforce the window tint law selectively because violations are too numerous. He stated at trial that he uses the law to "fish" for other violations, and that he stops any vehicle that "peaks [his] interest." Mason's trial counsel did not ask Trooper Swicord to elaborate on this pronouncement, nor did she question him about the racial makeup

23

of those he stops. Mason also presents evidence that window tint laws in other jurisdictions have an association with complaints of racial profiling. See, e.g., Police Complaints Board, MPD Enforcement of the District's Window Tint Law (Nov. 21, 2013) (reporting that African American motorists filed 97 percent of complaints related to window tint law enforcement). Although this evidence cannot prove a discriminatory effect in Georgia, it is relevant to the question of whether counsel's decision not to investigate discriminatory effect was reasonable.[1] The fact that window tint laws have been linked to racial discrimination in other jurisdictions, combined with Trooper Swicord's admittedly subjective enforcement of Georgia's window tint law, may not be sufficient standing alone. But coupled with the evidence suggesting discriminatory purpose discussed below, these facts would have motivated a reasonable attorney to investigate a potential discriminatory effect.

"[D]iscriminatory purpose may often be inferred from the totality of the relevant facts." Washington v. Davis, 426 U.S. 229, 242 (1976). Here, several facts suggest that race may have

---

[1] Mason need not prove that investigation would have produced evidence of discriminatory effect in order to show that his counsel's failure to investigate was unreasonable. See Becton v. Barnett, 920 F.2d 1190, 1193-94 (4th Cir. 1990) (holding that defendant was entitled to an evidentiary hearing on his claim that counsel was ineffective for failing to investigate his mental capacity even though he had not proven he was mentally incompetent at trial).

motivated Trooper Swicord's actions.  Trooper Swicord admitted to using window tint violations to "fish" for other violations.[2] He testified that he became suspicious when Mason failed to pull over quickly, but the video of the traffic stop shows that Mason began to pull over mere seconds after Trooper Swicord activated his blue lights.  Right after pulling Mason over, Trooper Swicord questioned Mason and Govan about matters unrelated to the window tint before testing the windows' transparency. Trooper Swicord testified that Mason appeared nervous and refused to make eye contact, but the video of the stop contradicts this assessment.  After questioning Mason and Govan, Trooper Swicord called for backup, referring to Mason and Govan as "spooky, spooky."[3]  At the suppression hearing, when asked why he called for backup, Trooper Swicord stated that he feared the situation would turn violent, noting that "Mr. Mason and Mr. Govan are older black males that are not in good shape."  He did not explain why he felt Mason and Govan's race was relevant to his belief that they were likely "fixing to shoot it out," and Mason's counsel did not ask.  Furthermore, Trooper Swicord's actions were not those of an officer fearing for his safety.  He

_____

[2] Mason's window transparency was 26 percent, just slightly below the legal minimum of 32 percent plus or minus three percent.  Ga. Code § 40-8-73.1(b)(2).

[3] As Mason points out, the term "spook" is a racial epithet. See Oxford English Dictionary (2d ed. 1989) (defining "spook" as "[a] derogatory term for a black person").

25

left Mason standing outside the car and turned his back on him while he questioned Govan. He called in Mason and Govan's names, but asked that the dispatcher "[j]ust hold em for right now" rather than provide a background check. He contacted a specific K9 officer instead of placing a general call for backup.

Perhaps each of these facts could be explained away. Maybe Trooper Swicord did not mean "spooky" to be a racial epithet. Maybe something other than Mason and Govan's race "peaked [his] interest." Maybe he was simply using "older black males" as an identifier (although it is difficult to see why such a description would be relevant in the context of providing justification for calling backup). But we do not know why Trooper Swicord did what he did, because Mason's counsel did not question him about his race-related references or the contradictions between his testimony and the video of the stop. These numerous red flags, when viewed as a whole, would lead any reasonable attorney to investigate whether Trooper Swicord had a discriminatory motive for initiating and continuing the traffic stop.

The majority asserts that "the stop could not have been racially motivated" because the window tint would have prevented Trooper Swicord from identifying the occupants' race before pulling them over. This contention, which was raised for the

26

first time by the government on appeal, finds no support in the record. In fact, it is directly contradicted by Trooper Swicord's testimony that he was parked on the median when Mason drove by (thereby giving him a view through the clear windshield of the vehicle) and that he could observe Mason and Govan speaking to each other before pulling over. When, as here, the district court denies a § 2255 motion without holding an evidentiary hearing, "we review the facts in the light most favorable to the § 2255 movant." United States v. Poindexter, 492 F.3d 263, 267 (4th Cir. 2007). At the very least, this is a disputed material fact that merits an evidentiary hearing. United States v. White, 366 F.3d 291, 297 (4th Cir. 2004).

The majority believes that Mason's counsel acted competently because she pursued a Fourth Amendment claim instead of a selective enforcement claim. But as the majority itself is forced to admit, Fourth Amendment and Equal Protection Clause challenges are not mutually exclusive. And while the standard for effective appellate counsel presumes that an attorney acts reasonably in choosing to pursue one claim over another, see, e.g., Smith v. Robbins, 528 U.S. 259, 287-88 (2000), the standard for trial counsel makes no such presumption. The fact that counsel was advancing a Fourth Amendment claim did not relieve her of her duty to conduct a reasonable investigation into a selective enforcement claim.

27

Counsel's failure to develop a selective enforcement claim prejudiced Mason.  Although the majority makes much of the fact that Armstrong sets a high bar for showing selective enforcement, Mason need only establish a reasonable probability that the outcome of the proceeding would have been different but for counsel's deficient performance.  Strickland, 466 U.S. at 694.  Given Trooper Swicord's subjective criteria for pursuing potential window tint violations, his race-tinged remarks, and the inconsistencies between his testimony and the traffic stop video, it is at least reasonably probable that Mason's trial counsel could have mounted a meritorious selective enforcement claim, and that such a claim would have resulted in Mason's freedom.  A successful Equal Protection Clause challenge would have required dismissal of charges, or at the very least suppression of key evidence obtained during the traffic stop. See United States v. Steele, 461 F.2d 1148, 1151 (9th Cir. 1972) ("A defendant cannot be convicted if he proves unconstitutional discrimination in the administration of a penal statute." (citing Two Guys from Harrison-Allentown, Inc. v. McGinley, 366 U.S. 582, 588 (1961))).

Of course the record does not conclusively establish a successful Equal Protection Clause challenge; trial counsel did not develop such a claim.  Strickland makes clear that counsel cannot escape accountability for failing to pursue a course of

28

action simply by making a "strategic choice." To withstand constitutional scrutiny, such a choice must be based on either a reasonable investigation or a reasonable decision that investigation was unnecessary. 466 U.S. at 690-91. Here, Mason's trial counsel was confronted with numerous indicators that race may have motivated Trooper Swicord's actions, but she did not investigate these red flags. Her failure to develop an Equal Protection Clause challenge in the face of this record cannot meet the standard for effective assistance guaranteed by the Sixth Amendment. Both Trooper Swicord's and Mason's narratives remain shrouded in uncertainty; at the very least, an evidentiary hearing is required. I dissent from the majority's holding on this issue.